McKINNEY DRILLING COMPANY v. NELLO L. TEER COMPANY, DUKE UNIVERSITY, EZRA MEIR ASSOCIATES, INC. AND THE PERKINS & WILL PARTNERSHIP

No. 7721SC1014

(Filed 7 November 1978)

**Contracts § 15— contractor not in privity with consulting engineer—no recovery for negligent inspection**

　　A contractor, not in privity with a consulting engineer, could not recover against the consulting engineer for negligent inspection; rather, the contractor could recover only upon a showing of bad faith conduct on the part of the consulting engineer.

APPEAL by plaintiff from *Long, Judge.* Judgment entered 3 October 1977 in the Superior Court, FORSYTH County. Heard in the Court of Appeals 20 September 1978.

Plaintiff is a caisson subcontractor responsible for drilling and excavating for foundation caissons for a construction project on Medical Science Building 1-C at Duke University. The defendant, Ezra Meir Associates, Inc. (Meir), is an engineering subcon-

tractor responsible for on-the-site inspections and supervision to assure that the caisson foundations excavated by plaintiff meet the weight bearing capacity requirements called for in the plans and specifications of the construction project.

The dispute between plaintiff and defendant arose when plaintiff had excavated the following designated caissons to their respective elevations above sea level: caisson G-12 to 359 feet; G-13 to 360 feet; H-11 to 357 feet; H-12 to 363 feet; H-13 to 362 feet. These were the elevations at which plaintiff's crew experienced drill rig refusal. Plaintiff insists that the plans and specifications do not require excavation to a particular elevation once weight bearing specifications have been met. The plaintiff contends that the above elevations met the requirements of the plans and specifications which called for 10 ton (20,000 lb.) weight bearing capacity. Nevertheless, upon the advice of defendant, Meir, who had inspected the caissons, the general contractor, Nello L. Teer, instructed the plaintiff to continue excavations to elevations of 353 to 358 feet. The general contractor presented to Duke, on behalf of the plaintiff, a claim for $8,968 additional compensation for the cost of the additional manual excavation. The supervising architect Perkins & Will Architects, Inc., pursuant to provisions of the contract between Teer and McKinney giving the architect final authority to determine the requirements of the plans and specifications, denied the request for additional compensation.

The construction project plans designated the duties of the defendant as follows:

"An inspector of an approved independent testing laboratory approved by the Architect, shall examine each caisson shaft hole after the excavation has been carried to refusal, and he shall determine from his inspection whether to drill a test hole to verify the soundness of the base rock or whether to continue the excavation deeper into the rock. Cost of such inspections shall be paid for by the Contractor."

The specifications for the caissons called for in the project plans and incorporated by reference into the Teer-McKinney contract, were as follows:

"All caisson foundation piers are designed for bearing value of 20,000 pounds per square foot. Every caisson must pene-

trate into the triassic rock a minimum of 2'00" until a bearing capacity of 20,000 pounds per square foot is reached. No caisson shall be poured until it has been inspected under the direct supervision of the Architect's representative."

The project plans included the following reference to tasks which the caisson subcontractor should be prepared to perform:

"Caisson contractor can expect some hand excavation in the bell portion of the caisson and is to include this in his base bid. Any bell excavation by hand in rock shall be included in the base bid. Any rock to be excavated in the shaft area of caissons will be included in the base price."

Plaintiff initiated this action 22 August 1975 against Meir for tortious interference with the performance of the contract between plaintiff and the general contractor. Defendant, Meir, moved for summary judgment on the grounds that the alleged negligence of defendant is insufficient to sustain a cause of action for tortious interference with contract. From the trial court's granting of defendant's motion for summary judgment and the entering of the order dismissing plaintiff's cause of action, plaintiff appeals.

*Hudson, Petree, Stockton, Stockton, and Robinson, by Dudley Humphrey and Jackson N. Steele, for plaintiff appellant.*

*Joyner and Howison, by Edward S. Finley, Jr., for defendant appellee.*

MORRIS, Judge.

The appellant and appellee agree that the crux of the question before this Court is whether McKinney can maintain a cause of action against Meir grounded on negligent performance of its contract with the general contractor, Nello L. Teer, to supervise the excavation caisson shafts. McKinney seeks to recover for the expense of manual excavation in the bell portion of the caisson which he argues exceeded the requirements called for in the plans and specifications of the construction project. For purposes of this appeal we can assume that Meir was negligent in its interpretation of test data.

Plaintiff conceded in his helpful brief and oral argument that he found no North Carolina cases on point. He, nevertheless, urges this Court to adopt the position taken by the courts of some other jurisdictions: that a contractor, not in privity with a consulting engineer, may recover against the consulting engineer for negligent inspection. *See e.g., United States v. Rogers & Rogers*, 161 F. Supp. 132 (S.D. Cal. 1958); *Normoyle-Berg & Assoc. v. Village of Deer Creek*, 39 Ill. App. 3d 744, 350 N.E. 2d 559 (1976); *A. R. Moyer, Inc. v. Graham*, 285 So. 2d 397 (Fla. 1973); *see generally* Annot., 65 A.L.R. 3d 249 (1975).

The defendant in an equally helpful brief and argument urges this Court to follow the North Carolina precedent established in employment contract cases that tortious interference with the performance of a contract is cognizable only as an intentional tort. *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176 (1954). In the alternative, defendant argues that the cases supporting plaintiff's cause of action are distinguishable because, unlike in those cases cited, this defendant did not have final authority to determine compliance with the contract. Such authority lay ultimately in the architect in this case.

We do not consider the numerous cases concerning interference with employment contracts as apposite. Though the complaint is couched in terms of interference with contract, the issue is clearly whether, in the absence of contractual privity, McKinney may recover from Meir for negligent performance of its contract with Teer. The question is one of duty. "Whether there is a duty owed by one person to another to use care, and, if so, the degree of care required, depends upon the relationship of the parties one to the other." *Insurance Co. v. Sprinkler Co.*, 266 N.C. 134, 140, 146 S.E. 2d 53, 60 (1966). A contract may give rise to such a duty. *Id.* The requirement of privity, however, has been discarded in products liability cases based on negligence. *Corprew v. Geigy Chemical Corp.*, 271 N.C. 485, 157 S.E. 2d 98 (1967). Nevertheless, North Carolina preserves the privity requirement in actions based on breach of warranty. *Wyatt v. Equipment Co.*, 253 N.C. 355, 117 S.E. 2d 21 (1960). The privity requirement has been somewhat relaxed in cases where advertising to the ultimate consumer provided a sufficient link with the manufacturer to establish an express warranty running to that ultimate consumer, especially on products for intimate bodily use or human

consumption. *Tedder v. Bottling Co.*, 270 N.C. 301, 154 S.E. 2d 337 (1967). Nevertheless, the privity requirement remains viable in North Carolina. *Williams v. General Motors Corp.*, 19 N.C. App. 337, 198 S.E. 2d 766 (1973), *cert. den.*, 284 N.C. 258, 200 S.E. 2d 659 (1973); *Gillispie v. Bottling Co.*, 17 N.C. App. 545, 195 S.E. 2d 45 (1973), *cert. den.*, 283 N.C. 393, 196 S.E. 2d 275 (1973). These cases have held fast to the privity requirement in the face of mounting criticism. Prosser, The Assault Upon the Citadel, 69 Yale L.J. 1009 (1960).

The rejection of the privity requirement in finding liability in an architect or supervising engineer has followed the same course as the abolishment of privity in products liability cases throughout the country. Courts have been much less willing to discard the privity requirement when there is economic loss rather than personal injury. *See generally* Note, Architect Tort Liability, 55 Cal. L. Rev. 1361 (1967).

The North Carolina cases finding liability for negligent performance of a contractual duty in the absence of privity of contract have been limited to actions for personal injury or property damages. *See e.g., Council v. Dickerson's, Inc.*, 233 N.C. 472, 64 S.E. 2d 551 (1951) (automobile damaged because of negligent highway paving); *Jones v. Otis Elevator Co.*, 234 N.C. 512, 67 S.E. 2d 492 (1951) (personal injury from fall in elevator shaft); *McIntyre v. Monarch Elevator & Machine Co.*, 230 N.C. 539, 54 S.E. 2d 45 (1949) (personal injury from fall in elevator shaft). We note that this action is not brought on the basis of third party beneficiary in contract. *See e.g., Potter v. Carolina Water Co.*, 253 N.C. 112, 116 S.E. 2d 374 (1960) (breach of contract with city to maintain sufficient water pressure in fire hydrant). We have been cited to no North Carolina decisions and have found none allowing recovery for loss of profits to a third party injured from the negligent breach of contract.

There is North Carolina precedent which remains controlling in this matter because of our courts' continued adherence to the privity doctrine in cases outside the scope of products liability or in cases not involving personal injury or property damage. *Durham v. Engineering Co.*, 255 N.C. 98, 120 S.E. 2d 564 (1961). The *Durham* case involved an action by the City of Durham against an electrical contractor and his surety. The contractor and

surety denied breach of contract and filed a cross-action against the supervising engineers, alleging that if the contract was not properly performed it was due to the negligent supervision of work by the engineers. The contract forming the basis of this action was between the city and the electrical contractor. The supervising engineer's duties were outlined in the contract between the electrical contractor and the city. The contract stated that the supervising engineer ". . . shall decide the meaning and intent of any portion of [the] specifications or of the plans . . ." and ". . . shall have the final decision on all matters of dispute involving the character of the work. . . ." *Id.*, 255 N.C. at 102, 120 S.E. 2d at 567. The Court then concluded:

> "We hold that, with respect to the interpretation of the meaning and intent of the plans and specifications, as well as to the authorization that additional work not expressly authorized in the contract but which the Engineers may deem necessary to the fulfillment of the terms of the contract and the proper completion of the job, which authority is expressly granted to the Engineers in the contract, together with their decision on all matters of dispute involving the character of the work, compensation for extra work, etc., the Engineers in making such decisions under the terms of the contract would be acting in the capacity of arbitrators and could not be held liable in damages to either party to the contract in the absence of bad faith. [Citations omitted.]" 255 N.C. at 102 and 103, 120 S.E. 2d at 567.

Therefore, we hold, on the authority of *Durham*, that the defendant Meir cannot be held liable for negligence in the absence of privity of contract. Plaintiff's sole right to relief would be based on bad faith conduct of Meir. In so holding, we note that the *Durham* Court refused to impose a duty of due care on the supervising engineer running to persons not a party to the contract, even though he had authority "tantamount to a power of economic life or death" over the contractor. *Contra, United States v. Rogers & Rogers*, supra, 161 F. Supp. at 135-136. Similarly, the Fourth Circuit, citing *Durham*, has refused to find liability against a supervising architect in the absence of bad faith. *Ballou v. Basic Construction Co.*, 407 F. 2d 1137 (4th Cir. 1969); *see also Blecick v. School Dist. No. 18*, 2 Ariz. App. 115, 406 P. 2d 750 (1965). It is especially appropriate on the facts of this case to impose liability

only upon a showing of bad faith. Meir has a contractual obligation to Teer to assure that the caisson excavation complies with the minimum specifications called for in the construction plans. Meir should not be unnecessarily burdened with fear of liability for requiring work *exceeding* plan specifications. Negligent failure to perform his primary contractual duty with the general contractor could result in a defective foundation and possible extensive liability. Furthermore, McKinney could not have relied on performing its contract by excavating only to the point of drill rig refusal. As quoted above, the plans specify that the caisson contractor could expect manual excavation. In the absence of bad faith, plaintiff is sufficiently protected by submitting the dispute to the architect for resolution. The architect occupies the position of an arbitrator to resolve disputes concerning the requirements of the construction plans. *Durham v. Engineering Co., supra.*

We note that defendant denominated his motion which was granted in the trial court as one for summary judgment pursuant to G.S. 1A-1, Rule 56. He moved that the court grant judgment in his favor as a matter of law in that "Plaintiff has failed to state a claim for tortious interference with the performance of its contract." Although in the form of a motion for summary judgment, the test is the same as on a motion to dismiss under G.S. 1A-1, Rule 12(b)(6). *See* 6 J. Moore, Federal Practice, ¶ 56.02[3] (2d ed. 1971); 10 Wright and Miller, Federal Practice and Procedure: Civil § 2713. "The test on a motion to dismiss for failure to state a claim is whether the pleading is legally sufficient" to state a cause of action. 6 J. Moore, Federal Practice at p. 56-28. We find that plaintiff's complaint fails sufficiently to allege bad faith on the part of the defendant Meir. Therefore, the trial court's order dismissing the third cause of action is

Affirmed.

Judges MITCHELL and ERWIN concur.